UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DIANE WILLIAMS,

        Petitioner,

                                 CASE NO. 2:06-CV-15386

  v.                          JUDGE MARIANNE O. BATTANI
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

CLARICE STOVALL,

        Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|---|
| I. | | RECOMMENDATION | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | | REPORT | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A. | *Procedural History* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | C. | *Exhaustion* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | D. | *Standard of Review* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| | E. | *Sufficiency of the Evidence (Claim I)* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | | 1. | *Clearly Established Law* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | | 2. | *Analysis* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| | F. | *Other Acts Evidence (Claim II)* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| | | 1. | *Clearly Established Law* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| | | 2. | *Analysis* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| | G. | *Confrontation (Claim V)* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| | H. | *Ineffective Assistance of Counsel (Claim III, IV, and VI)* | . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| | | 1. | *Clearly Established Law* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | | 2. | *Analyis* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | | | a. Failure to Object to Evidence of Stolen Purse | . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | | | b. Failure to Move for Appointment of Expert | . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | | | c. Failure to Call Witnesses | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | | | d. Failure to Allow Petitioner to Testify | . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 |
| | | | e. Failure to Present a Defense | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| | I. | *Cumulative Error (Claim VII)* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| | J. | *Conclusion* | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Diane Williams is a state prisoner, currently confined at the Robert Scott Correctional Facility in Plymouth, Michigan.

2.      On April 25, 2003, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317, following a jury trial in the Macomb County Circuit Court.  On June 5, 2003, she was sentenced to a term of 31-75 years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT DEFENDANT'S SECOND-DEGREE MURDER CONVICTION.

II.     WITHOUT BENEFIT OF PRE-TRIAL NOTICE AND THE RATIONALE FOR ADMISSION, THE PROSECUTOR ELICITED EVIDENCE OF AN UNRELATED THEFT OF A PURSE AND WALLET.  THE PROSECUTOR'S INJECTION OF ISSUES BROADER THAN THE GUILT OR INNOCENCE OF THE ACCUSED DENIED A FAIR TRIAL.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL DENIED DEFENDANT A FAIR TRIAL.

        A.  Counsel failed to move *in limine* to exclude prejudicial evidence of an unrelated theft of a purse, and failed to object to other acts introduced without notice of the intent to introduce and the rationale for introduction.

        B.  Counsel failed to move for the appointment of an expert forensic pathologist.

The court of appeals found no merit to petitioner's claims, and affirmed her conviction and sentence. *See People v. Williams*, No. 249138, 2005 WL 119781 (Mich. Ct. App. Jan. 20, 2005) (per curiam).

2

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court, as well as four new claims:

IV.     DEFENDANT WAS DEPRIVED OF HER U.S. CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE HER BY THE SIXTH AMENDMENT RIGHT TO HAVE WITNESSES IN HER BEHALF DENIED TO DEFENDANT BY HER TRIAL ATTORNEY.

V.      DEFENDANT WAS DENIED A FAIR TRIAL WHEN INADMISSIBLE HEARSAY (TESTIMONIAL) WAS ADMITTED DURING TRIAL IN VIOLATION OF HER SIXTH AMENDMENT RIGHT UNDER THE CONSTITUTION TO CONFRONT WITNESSES AGAINST DEFENDANT.

VI.     DEFENDANT WAS DENIED A FAIR TRIAL WHEN DEFENSE COUNSEL DID NOT PROVIDE A DEFENSE IN VIOLATION OF DEFENDANT'S U.S. CONSTITUTIONAL RIGHT UNDER THE DUE PROCESS CLAUSE.

VII.    DEFENDANT WAS DENIED A FAIR TRIAL WHEN CUMULATIVE ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Williams*, 474 Mich. 855, 702 N.W.2d 586 (2005).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 5, 2006.  As grounds for the writ of habeas corpus, she raises the seven claims that she raised in the Michigan Supreme Court.

6.      Respondent filed her answer on June 13, 2007.  She contends that petitioner's claims are not exhausted and should be dismissed on that basis.

7.      Petitioner filed a reply to respondent's answer on July 30, 2007.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of murder in connection with the death of Edward West.  The

3

evidence adduced at trial was accurately summarized in the prosecutor's brief in the Michigan Court

of Appeals:

> Carrie Ann Thompson was the defendant's neighbor in September 2002 when Ms. Thompson heard a female yelling vulgarly while she was in her basement. She then heard "skin-to-skin contact" and "an old man cry." Ms. Thompson called the police. Ms. Thompson had heard the yelling sporadically for two weeks prior to her calling the police. (T, 4/24/03, p.m., 40-42). Ms. Thompson could hear into the defendant's basement because there is a two-inch gap between her basement and the defendant's. (T, 4/24/03, p.m., 43). Specifically Ms. Thompson heard the woman screaming that someone had "pissed their pants". Ms. Thompson also heard: "get up the stairs motherfucker; I'm gonna punch you in the face; get up the stairs; I'm gonna step on your hands." (T, 4/24/03, p.m., 42, 44). At that time, Ms. Thompson did not know that anyone else was living in the home. (T, 4/24/03, p.m., 42).

> Anthony Davis lived on the other side of defendant. (T, 4/24/03, p.m., 49-50). Mr. Davis also heard loud arguing coming from inside the defendant's townhouse. (T, 4/24/03, p.m., 50). On cross-examination, Mr. Davis indicated that he saw Mr. West in April of 2002 and that Mr. West was skinny and outside smoking a cigarette. (T, 4/24/03, p.m., 56-57).

> Warren Police Officer Ronald Visbara responded to Gloede Street on September 13, 2002 for a welfare check with Officer Daniel Bradley. Officer Visbara went to the manager's office and spoke with the Lamberts' who indicated that another tenant, Carrie Thompson had stated that there might be a problem with her neighbor. (T, 4/23/03, 50-51). Officer Visbara responded to Ms. Thompson's apartment with her and went to her basement where she indicated that she had been hearing noises. The officer heard two people in the other basement. The female was "very angry, very upset" and "appeared to be very violent." The female was yelling at the other person and then every 10 to 15 seconds, the officer would hear a slapping sound which sounded like someone hitting someone or something else. After each slapping sound, the officer heard the other person moan in pain. The officer heard this once he arrived at the bottom of the stairs. (T, 4/23/03, 53-54). The female was continually swearing and saying "bitch" to the other person. The officer heard, "'Stop, stop arguing with me, bitch' and then that would be followed by a slap. 'Stop peeing on the floor, bitch.' That would be followed by another slap." This dialogue continued for the two minutes that the officer listened. The officer then left because he was concerned. He went to get the other officer and a master key for the apartment next to Ms. Thompson's. (T, 4/23/03, 55).

> Officer Bradley went to the west door and was looking through the mail slot while Officer Visbara used the key to open the east door and went inside. (T, 4/23/03, 56-57). Both officers had knocked on the door several times before the officer walked in. (T, 4/23/03, 59). As Officer Visbara entered, Officer Bradley indicated that someone was coming up from the basement steps. (T, 4/23/03, 56-57). The defendant was identified as the person coming up the stairs. (T, 4/23/03, 57-58).

Officer Bradley went down to the basement. Once he was assured his partner was safe, Officer Visbara sat down with the defendant. The defendant was "pretty calm and pretty nonchalant" even though the police had come into her home during the day. (T, 4/23/03, 60).

Officer Visbara looked in the basement for a couple of seconds to assure that his partner was safe, during that time, he viewed Mr. West on the basement floor with his pants pulled down to his ankles and wearing no underwear. Mr. West was injured and since the officer believed that the defendant was involved, Officer Visbara stayed with her to try to find out what had occurred. (T, 4/23/03, 61).

Officer Visbara read the defendant her *Miranda* rights. The defendant agreed to speak with the officer. The defendant indicated that she knew Mr. West from the "old neighborhood" in Detroit and he was living with her. (T, 4/23/03, 61-62). The defendant indicated that Mr. West was "lazy and she tries to get him to work out, she tries to get him to walk, she tries to get him to use exercise equipment and she pushes him pretty hard trying to basically get him back in shape, and she also indicated that she does lose her temper with him because he's not a very good listener." (T, 4/23/03, 63).

Mr. West appeared "very dirty, very smelly, very malnourished, definitely underweight for his height. He probably was 30 or 35 pounds less than what a normal man would weigh for that same height, very unkept (sic), numerous bruises." The officer indicated, "He was in a bad way." (T, 4/23/03, 63-64). It was evidence that Mr. West had not been taken care of or fed properly in recent months. (T, 4/23/03, 70).

Mr. West's walker was not near him in the basement, it was 10 feet away. (T, 4/23/03, 64). Mr. West was transported to St. John's Macomb Hospital in Warren. (T, 4/23/03, 64-65).

Officer Visbara noticed bruises on Mr. West's legs, shoulders, and arms. The officer also noticed cuts and lacerations on Mr. West's body. (T, 4/23/03, 67). There was no blood on the defendant. Her hands did not show any bruises. (T, 4/23/03, 68-69).

The defendant told the officer different versions of why Mr. West was living with her. The defendant indicated that she had brought Mr. West into her home to care for him. (T, 4/23/03, 72).

Officer Visbara indicated that Mr. West's condition was the wors[t] state he had ever seen anyone in his 17-year law enforcement career. (T, 4/23/03, 75).

Officer Daniel Bradley proceeded down the basement when he entered the defendant's apartment. (T, 4/23/03, 85). At the bottom of the stairs, the officer saw an elderly black man moaning as he lay on the floor. (T, 4/23/03, 87). The man appeared, "very, very skinny" and had cuts and bruises all over his body. (T, 4/23/03, 88). Officer Bradley also noticed scars and scratches all over the man's body. (T, 4/23/03, 92). As the officer tried to find out the man's name, the man just kept saying, "to stop hitting him" and "no more". (T, 4/23/03, 89, 103).

After the man was transported to the hospital, Officer Bradley went upstairs and spoke with the defendant who indicated that the man, Mr. West, had lived there

5

for approximately three months.  According to the defendant, she was voluntarily caring for him, although it did not appear, to the officer, that the man was getting any care.  (T, 4/23/03, 94).

Detective Keith Keitz and Detective Mark Christian responded to the defendant's home and waited until a search warrant was procured.  Upon a search warrant being authorized, the two detectives entered the home.  (T, 4/23/03, p.m., 10).  Upon looking at the first floor, the detective discovered credit card applications in Mr. West's name and a large amount of bulk mail in the defendant's name.  A lock and some chains were on the microwave.  The chains appeared freshly washed.  A couple of gallons of bleach and a bucket with water in it was in the kitchen.  (T, 4/23/03, p.m., 12).

One of the bedrooms had a lot of clutter and boxes.  The other bedroom had a bed with no sheets.  There were a lot of ladies clothing in that bedroom, but there was no male clothing any where in the home.  (T, 4/23/03, p.m., 13).  There was no medications, bedpans, diapers or any type of things that would identify than an elderly person was being care[d] for at the home.  (T, 4/23/03, p.m., 12-14).

Upon returning to the home, Detective Keitz found a bungee cord, chains, more locks and a homemade ligature or restraint device in a kitchen drawer.  (T, 4/23/03, p.m., 15-16, 18-19).  Farther back in the same drawer was a blue wallet with identification of Joanna Bisick.  (T, 4/23/03, p.m., 20).

Detective Keitz also found the defendant's resume, which indicates an objective or advancing in the nursing and medical assistant field.  (T, 4/23/03, p.m., 28).  The resume indicates that the defendant is skilled in geriatric care and graduated from a nurse assistant program.  (T, 4/23/03, p.m., 29).  The resume states that the defendant is a certified medical assistant.  (T, 4/23/03, p.m., 30).

Based on a handwritten note from the defendant, People's 20 (which was admitted with objection), the detective contacted Huntington Bank and then Joanna Bisick.  Ms. Bisick indicated that her purse had been stolen at Kroger's and she did not know the defendant or the victim.  (T, 4/23/03, p.m., 21-22, 32, 33-34).  On cross-examination, the detective indicated that the credit card applications were pre-approved junk mail that everyone receives and were not filled out.  (T, 4/23/03, p.m., 36).  Detective Dave Andrews testified during cross-examination that there was credit card activity on the victim's accounts while the defendant was incarcerated.  (T, 4/23/03, p.m., 97-98).

Dr. Werner Spitz is Macomb County's medical examiner.  Trial counsel agreed that Dr. Spitz is qualified as an expert in the field of forensic pathology.  (T, 4/23/03, 29, 30).  Mr. West died in the hospital on September 27, 2002.  (T, 4/23/03, 68).  Dr. Spitz performed the autopsy on September 29, 2002.  (T, 4/23/03, 30-31).  Mr. West's autopsy showed that he was emaciated and dehydrated.  Mr. West's eyes and cheeks were sunken, his skin had lost its elasticity and he had practically no body fat.  (T, 4/23/03, 32).

Mr. West had a healing laceration above his left eyebrow.  The victim also had other bruises on his chest and forearm which the doctor attributed to slapping.  There were incisions on his wrist which showed fresh and recent hemorrhage.

6

Similar bruises were evidence on the right wrist. The doctor interpreted the wrist injuries as being restraint injuries. (T, 4/23/03, 33, 40).

The victim also had an ulcer on his right thumb as well as scattered other bruises on his knees, legs and feet. (T, 4/23/03, 33-34). Mr. West also had a sunken, concave abdomen which indicates that his "state of nutrition was poor". (T, 4/23/03, 35-36). Mr. West's lower to mid back also showed evidence of old scars. (T, 4/23/03, 37-38).

Internally, the pictures show that there were injuries to the skull. (T, 4/23/03, 41). There was a bruise in the back of the forehead and a bruise near a cowlick in the back. (T, 4/23/03, 43-44).

Dr. Spitz concluded that this was a homicide. The "(c)ause of death was pneumonia and sepsis, complicating multiple trauma". (T, 4/23/03, 44). The complicated multiple trauma was caused by repeated beatings and chronic abuse. Mr. West's body showed ongoing maltreatment. The body was not in a clean condition. The body had infections that should have been treated. Mr. West was "severely poorly nourished." (T, 4/23/03, 45). Dr. Spitz concluded, "The whole picture looked to me like this is something that was not being taken care of correctly and abused and handled badly to inflict wounds." (Id.). None of Mr. West's injuries were consistent with lying in a hospital bed for two weeks. (T, 4/23/03, 47).

Trial counsel cross-examined Dr. Spitz about whether Mr. West was emaciated from his body not accepting the food and not necessarily that he hadn't eaten. (T, 4/24/03, a.m., 5). . . . Mr. West had not teeth, the doctor did not recall if he had dentures. (T, 4/24/03, a.m., 6).

The doctor indicated that Mr. West at 75 years old did not need to look as he did unless he had a severe illness and Mr. West had no such illness. Although, Dr. Spitz indicated that he does not know if Mr. West wanted to eat or not. (T, 4/24/03, a.m., 7). The doctor does not know what his appetite was, but knows that Mr. West was "in a very reduced state of nutrition." (T, 4/24/03, a.m., 10). The lack of teeth would not prevent someone from eating since other alternatives to chewing exist. (T, 4/24/03, a.m., 7-8).

Trial counsel tried to elicit that some of Mr. West's injuries could be consistent with falling based on the victim's use of a walker. (T, 4/24/03, a.m., 14). The doctor admitted only that there was a remote possibility that the injuries were the result of falls. (T, 4/24/03, a.m., 16).

The doctor agreed with trial counsel, however, that the fact there was no liver damage did not mean that Mr. West was not a heavy drinker. (T, 4/24/03, a.m., 17-18). The manner of death is arrived at by looking at the body as a whole at autopsy, the location of the injuries as well as the circumstances described by the police. (T, 4/24/03, a.m., 19). In this case, upon cross-examination of how the doctor came to his conclusions of the manner of death, Dr. Spitz indicated that he looked at Mr. West's body before autopsy and noted "a reduced state of health", "neglected state of cleanliness" and that the body was in an "overall neglected state." (T, 4/24/03, a.m., 22). Mr. West had injuries on his arms which were consistent with defendant himself from an "on-coming blow". The injuries were "not innocent type injuries."

7

(T, 4/24/03, a.m., 22).   Further, when the doctor noted the pneumonia during autopsy, he puts all of the factors together to arrive at his conclusion based on the location, type and duration of the injuries, the medical neglect and the lack of cleanliness to find that Mr. West should not have died.  (T, 4/24/03, a.m., 22-23).  Mr. West's injuries could have been treated and he could have been fed.  (T, 4/24/03, a.m., 27).

Trial counsel attempted to have Dr. Spitz state that the hospital should have turned Mr. West's condition around in the two weeks he was there.  (T, 4/24/03, 27-32).   However, Dr. Spitz indicated that based on the medical records he reviewed, Mr. West's condition was "far advanced" and he is sure that the hospital did all that they could.  Dr. Spitz noted that Mr. West "was too far gone when he came in."  (T, 4/24/03, 31-32).  During cross-examination, trial counsel indicated, "You're a very respected person.  I don't argue with your methods in the least."  (T, 4/24/03, 33).  Trial counsel also raised that three of the doctor's methodology of death were subject to interpretation.  (T, 4/24/03, 34-35).   Trial counsel also tried to advance the position that some of the injuries were the result of bedsores.  (T, 4/24/03, 37-41).  The doctor found no injuries, however, that he believed were bedsores.  (T, 4/24/03, 40).  Trial counsel concluded by thanking the doctor and noting that his testimony was "Very enlightening."  (T, 4/24/03, 44).  Cross-examination took over an hour.  (T, 4/24/03, 3, 45).

Pl.-Appellee's Br. on Appeal, in *People v. Williams*, No. 249138 (Mich. Ct. App.), at 1-10.

C.   *Exhaustion*

Respondent contends that the Court should dismiss the petition because petitioner's claims are unexhausted.  Specifically, respondent argues that "[t]he claims presented in this petition were not presented to the Michigan Court of Appeals and the Michigan Supreme Court."  Answer, at 4.

The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  To

8

satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law.  *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)).  Further, the petitioner must fairly present the claim at each level of state court review.  *See O'Sullivan*, 526 U.S. at 845-47.

Exhaustion is not required only if "(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).  A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety.  *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).  A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims.  *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

At the outset, respondent's contention that none of petitioner's claims were raised in the Michigan Court of Appeals and Michigan Supreme Court is without basis.  Petitioner's first three claims were raised in both courts, and the Michigan Court of Appeals considered those claims on the merits.  Petitioner's remaining claims were raised in the Michigan Supreme Court.  Nevertheless, the remaining claims are unexhausted because they were not presented to the Michigan Court of Appeals, and as noted above to be properly exhausted a claim must be raised at all levels of state

court review.

However, assuming that petitioner's claims are partially unexhausted, the Court should nevertheless consider the claims on the merits.  Despite the exhaustion requirement, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2) (emphasis added).  Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review.  *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987).  In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims.  *See Cain*, 947 F.2d at 820.  Here, exhaustion would be fruitless, as it is likely that the Michigan Courts would find that petitioner's fourth through seventh claims are barred by her failure to raise them on direct appeal.  *See* MICH. CT. R. 6.508(D)(3).  Further, as discussed below, petitioner is not entitled to relief on any of her claims.  Accordingly, the Court should dismiss the claims on the merits rather than require further review in the state courts.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

11

the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sufficiency of the Evidence (Claim I)*

Petitioner first contends that the evidence was insufficient to establish her guilt beyond a reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

12

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691

13

(1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).  Accordingly, it is necessary to examine the elements of second degree murder under Michigan law.

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment.  *See* MICH. COMP. LAWS § 750.317.  To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought.  In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.  *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).

2.    *Analysis*

Petitioner contends that the evidence was insufficient to show beyond a reasonable doubt that the victim's death resulted from maltreatment he received at the her hands.  Specifically, in her brief to the Michigan Court of Appeals, petitioner argued that

> [t]he evidence clearly shows that the prosecution asked the jury to speculate as to whether the decedent even died from a criminal agency because: (1) the decedent was a 75-year-old smoker with severe emphysema and, thereby, highly susceptible to pneumonia; (2) the bruises on the body were "superficial" and "nothing of great severity"; (3) Dr. Spitz could not tell the jury to a "medical certainty" that decedent's wounds were from a beating or from neglect; (4) Dr. Spitz was unable to tell the jury the age of the wounds, thus, his opinion that decedent was "mistreated by omission of medical treatment" was, again, speculative; (5) Dr. Spitz could not opine regarding the portal of entry of the bacteria causing pneumonia; (6) Dr. Spitz admitted that there was no litmus test to indicate chronic abuse and that his opinion that the decedent received repeated beatings was based on his subjective interpretation; and (7) the decedent died following a two-week hospital admission.

14

Def.-Appellant's Br., in *People v. Williams*, No. 249138 (Mich. Ct. App.), at 14.  The court of appeals rejected this argument, reasoning that "Spitz testified unequivocally that the victim had been chronically abused, that his death should not have occurred, and that the manner of death was homicide.  The testimony of the police, the neighbor, and the restraints found at the home corroborated the physical evidence of abuse.  Therefore, the prosecution presented sufficient evidence to prove beyond a reasonable doubt that defendant abused the victim, that the abuse caused his death, and that defendant willfully disregarded the likelihood that the natural tendency of her acts would cause death or great bodily harm."  *Williams*, 2005 WL 119781, at *2, slip op. at 2.  The Court should conclude that this determination was reasonable.

Contrary to petitioner's characterization of the evidence, Dr. Spitz's testimony was not speculative.  Dr. Spitz testified unequivocally that the victim had signs of malnourishment, lack of hygiene, untreated medical issues, and abuse.  His testimony regarding abuse was corroborated by the police officers and neighbor who heard one instance of physical abuse occurring.  While it is true that some aspects of Dr. Spitz's testimony were based on his subjective interpretations, this is precisely the reason for having an expert witness.  The fact that an expert relies upon his expertise in reaching a conclusion does not render his testimony "speculative."  Dr. Spitz was unequivocal in his testimony regarding the cause of death, and with respect to the manner of death he testified that, although some judgment was brought to bear on the question, it was "highly likely that all this together is a manifestation of abuse."  Trial Tr., dated 4/24/03, a.m., at 35.  As the Michigan courts have observed, "a prosecutor need not prove with absolute certainty that a particular incident caused the victim's death; a *medical likelihood* suffices."  *People v. Stiller*, 242 Mich. App. 38, 52, 617 N.W.2d 697, 704 (2000).

From Dr. Spitz's testimony, coupled with the testimony of the police officers and the victim's neighbor, a rational trier of fact could have concluded from the evidence that petitioner "intentionally set in motion a force likely to cause death or great bodily harm," *Aaron*, 409 Mich. at 729, 299 N.W.2d at 327; *accord People v. Cairns*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999), or acted in wanton and willful disregard of the natural tendency of her actions to cause death or great bodily harm, and thus acted with the malice aforethought necessary to sustain a conviction for murder. Dr. Spitz's conclusions are not subject to attack here, as it is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). Further, although there may have been other conclusions which could be drawn consistent with the evidence, the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Thus, the Michigan Court of Appeals did not unreasonably apply federal law in finding that Dr. Spitz's testimony provided sufficient evidence to prove petitioner's guilt beyond a reasonable doubt. *See Whitlatch v. Senkowski*, 344 F. Supp. 2d 898, 904-05 (W.D.N.Y. 2004) (sufficient evidence supported petitioner's conviction notwithstanding that victim was 88 years old and had various medical ailments where medical examiner testified that victim suffered a broken rib during petitioner's robbery of him and that there was a causal connection between that injury and the irregular heartbeat that caused the victim's death). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Other Acts Evidence (Claim II)*

Petitioner next claims that she was denied a fair trial by the introduction of other acts evidence.  Specifically, Detective Keitz testified that upon finding a purse at petitioner's home, he spoke with Joanna Bisick, whose identification was inside the purse.  Ms. Bisick told him that her purse had been stolen at a grocery store across the street from petitioner's home, and that she knew neither petitioner nor the victim.  *See* Trial Tr., dated 4/24/03, at 33-34.  Petitioner contends that this evidence was inadmissible prior bad acts evidence prohibited by Rule 404(b), and that the prosecution failed to provide notice of its intent to introduce this evidence as required by Rule 404. The court of appeals, reviewing the issue for plain error, rejected petitioner's claim, reasoning that the circumstances regarding the theft were not presented to the jury, but rather that "information was elicited with the credit card and other financial information to indicate that defendant's motive for the abuse of the victim was financial opportunity."  *Williams*, 2005 WL 119781, at *2, slip op. at 3.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483,

17

487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.    *Analysis*

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence.  This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b).  Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence

18

which is relevant in the defendant's trial.  *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Here, the Michigan Court of Appeals concluded that the evidence was relevant to establishing petitioner's motive in her conduct toward the victim.  Thus, petitioner cannot show that the admission of the evidence deprived her of a fair trial.  This conclusion is not altered by petitioner's argument that the prosecutor failed to provide notice of his intent to use this evidence as required by Rule 404.  This claim likewise raises solely an issue of state law.  *See Richardson v. Evans*, 99 F. 3d 1150, 1996 WL 603278, * 3 (10th Cir. October 22, 1996); *Doss v. Bock*, No. 00-10030, 2002 WL 1554363, * 13 (E.D. Mich. July 15, 2002) (Lawson, J.) (prosecutor's alleged failure to give prior notice of intent to introduce evidence of defendant's and other witnesses' wrongful acts did not rise to level of a due process violation).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Confrontation (Claim V)*

Petitioner also contends that she was denied her Sixth Amendment right to confront the witnesses against her when Detective Keitz testified regarding the statements made to him by Joanna Bisick.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner contends that the hearsay statements of Bisick constitute "testimonial hearsay," and because she did not have the opportunity to cross-examine Bisick the introduction of this testimonial hearsay violated her Sixth Amendment right to confront the witnesses against her.  *See Crawford v. Washington*, 541 U.S. 36, 58, 68-69 (2004).  The Court need not resolve whether

19

Bisick's statements to Detective Keitz constituted testimonial hearsay, however, because even if there was error in the admission of this evidence the error was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court held that trial error does not entitle state prisoners to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Confrontation Clause violations are subject to harmless error analysis. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999). Here, the brief testimony regarding Bisick's statements did not have a "substantial and injurious effect" on the jury's verdict. First, the fact of her purse being found at petitioner's house was not hearsay at all, and thus even without Bisick's statements the jury would have known that a purse not belonging to petitioner was found in her home. Second, Bisick's statements were only briefly mentioned, and were not dwelt on at length by either party. Third, Bisick's statements were only tangentially related to the issues in the case, and did not bear at all upon the two principle issues facing the jury: whether petitioner maltreated the victim and whether that treatment caused the victim's death. In light of the focus of the parties' presentations, the evidence against petitioner, and the collateral nature of the hearsay testimony, the evidence of Bisick's statements did not have a substantial and injurious effect on the jury's verdict, and thus any error in the admission of this testimony was harmless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Ineffective Assistance of Counsel (Claim III, IV, and VI)*

In her third, fourth, and sixth claims, petitioner contends that counsel provided constitutionally ineffective assistance at trial. Specifically, she contends that counsel was ineffective for failing to: (1) object to the admission of evidence regarding the stolen purse; (2) move for the

appointment of an expert forensic pathologist; (3) call various witnesses; (4) present a defense; and (5) allow her to testify on her own behalf.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

    2.    *Analyis*

*a. Failure to Object to Evidence of Stolen Purse*

Petitioner first contends that counsel was ineffective for failing to object to evidence of the stolen purse found in her home.  The Court should disagree.  "A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."  *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003). Because Detective Keitz made reference to petitioner's conduct briefly, and because that conduct was wholly unrelated to the crimes charged against petitioner, counsel could have concluded reasonably that it was better to let Keitz's testimony pass rather than call attention to it through an objection or curative instruction.  *See Hardamon*, 319 F.3d at 949; *Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989).

Second, petitioner cannot show that she was prejudiced by counsel's failure to object to this testimony.  The other acts testimony had nothing to do with the crimes charged, and thus it is unlikely that it had any effect on the jury's assessment of petitioner's guilt.  *See Billy-Eko v. United States*, 8 F.3d 111, 118 (2d Cir. 1993), *abrogated on other grounds by Massaro v. United States*, 123 S. Ct. 1690 (2003).  This is particularly so in light of the great disparity between the crime charged (murder) and the relatively minor other acts testimony.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*b. Failure to Move for Appointment of Expert*

Petitioner also contends that counsel was ineffective for failing to seek the appointment of an expert to contradict the testimony offered by Dr. Spitz. However, the state court record and petitioner's own pleading in this case fail to provide any evidence that an expert could have provided any testimony beneficial to the defense. She has identified no specific experts, nor pointed to anything which suggests that such experts would have testified on her behalf. "Speculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). In these circumstances, defendant has failed to meet her burden of establishing prejudice. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Tafaya v. Tansy*, 9 Fed. Appx. 862, 871, 2001 WL 557971, at *6 (10th Cir. 2001); *Dell v. Straub*, 194 F. Supp. 2d 629, 650-51 (E.D. Mich. 2002) (Friedman, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

### c. Failure to Call Witnesses

Petitioner next contends that counsel was ineffective for failing to call several witnesses on her behalf. Specifically, plaintiff identifies nine witnesses who she claims could have testified on her behalf. She contends that these witnesses would have testified that the chains found in the home were used to secure her possessions during various moves; that they had never seen the victim restrained in petitioner's home; that petitioner was not the victim's caregiver and that he did not need a caregiver; and that the victim was in poor health and did not eat despite the availability of food. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158

23

(E.D.N.Y. 1990).  As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.  [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful.  Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation.  Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment).

At the outset, petitioner's claim that counsel was deficient for failing to call these witnesses is belied by the record.  Four of the nine witnesses identified by petitioner in her habeas application were known by counsel, and counsel made a strategic decision not to present these witnesses.  Specifically, after the prosecution rested, counsel indicated to the trial court that witnesses Michelle Alexander, Lynette Grant, Lamar Russell, and a woman named Theresa would not be presented because "their testimony would be cumulative and not necessarily helpful to our theory of the case."  Petitioner indicated on the record that she understood her right to have these witnesses brought to court and agreed with counsel's decision.  *See* Trial Tr., dated 4/23/03, at 62-64.  Thus, the record reveals that counsel's decision not to call these witnesses was not the result of his failure to properly investigate, but a strategic decision which was discussed with, and acquiesced in by, petitioner.

Further, petitioner has presented no evidence which would establish that counsel was deficient or that she was prejudiced by the absence of these witnesses.  It is petitioner's burden to

24

establish the elements of her ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). "Generally, a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, petitioner has presented no affidavits from the witnesses averring that they were available and willing to testify, and that they would have done so in the manner suggested by petitioner.

Nor is petitioner entitled to an evidentiary hearing to develop this testimony. Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is not permissible because petitioner has "failed to develop the factual basis" of her ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[1] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

---

[1]This case should not be confused with the *Williams v. Taylor* case discussed in part B, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

counsel." *Id*. at 432.  Under Michigan law, to develop the factual basis of her ineffective assistance

of counsel claim petitioner was required to file a motion for a new trial and evidentiary hearing in

the trial court or a motion to remand for that purpose in the court of appeals.  *See People v. Ginther*,

390 Mich. 436, 443-44, 212 N.W.2d 922, 925 (1973); *People v. Gray*, 125 Mich. App. 482, 486, 336

N.W.2d 491, 493 (1983).  Here, neither the court of appeals materials submitted by respondent nor

the trial court docket sheet reflects the filing of a motion for an evidentiary hearing on any claim,

much less on the ineffective assistance of counsel claim relating to the missing witnesses, which was

not even asserted by petitioner in the court of appeals.

Thus, petitioner is not entitled to an evidentiary hearing to develop the factual bases of her

missing witnesses claim, she has presented no affidavits or other evidence supporting her claim that

counsel was deficient in failing to call theses witness or that they would have testified as she alleges,

and the state court record does not reflect any evidence which would support her ineffective

assistance of counsel claim.   In these circumstances, petitioner cannot carry her burden of

demonstrating that counsel was deficient or that she was prejudiced by counsel's failure to call these

witnesses.  *See Hutchinson v. Bell*, 303 F.3d 720, 749-50 (6th Cir. 2002).  Accordingly, the Court

should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Allow Petitioner to Testify

Petitioner next contends that counsel was ineffective for failing to allow her to testify.  The

Court should conclude that petitioner is not entitled to habeas relief on this claim.

When a tactical decision is made by an attorney that a defendant should not testify, the

defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A trial court

has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives

his or her right to testify. *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000).  In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987); *see also Liegakos v. Cooke,* 106 F. 3d 1381, 1386 (7th Cir. 1997).  Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *See Webber,* 208 F. 3d at 551.  Here, petitioner did not alert the trial court at the time of trial that she wanted to testify.  On the contrary, petitioner affirmatively indicated on the record that she knew she had the right to testify, had discussed the matter with counsel, and had decided not to testify.  *See* Trial Tr., dated 4/25/03, at 4.  Because the record is void of any indication by petitioner that she disagreed with counsel's advice that she should not testify, petitioner has not overcome the presumption that she willingly agreed to counsel's advice not to testify or that her counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *e.  Failure to Present a Defense*

Finally, petitioner contends that counsel failed to present a defense because he failed to call any witnesses, present any evidence, or seek an expert.  However, the principle issue in the case was whether petitioner mistreated the victim and, more importantly, whether that mistreatment caused the victim's death.  Counsel extensively cross-examined Dr. Spitz regarding the bases of his conclusions, and whether there were innocent explanations for his physical findings and the victim's death.  Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decision left to the judgment of trial counsel." *Gluzman v. United States*,

27

124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000).  Here, counsel reasonably chose to present a defense attacking the sufficiency of the prosecution's proof regarding the cause of the victim's injuries and death.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Cumulative Error (Claim VII)*

Finally, petitioner contends that she was denied a fair trial by the cumulative effect of the errors at her trial.  The Court should conclude that petitioner is not entitled to habeas relief on this basis.  It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair."  *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).  This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994).  As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus her cumulative error claim fails.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

28

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 4/3/09


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on April 3, 2009.

                    s/Eddrey Butts
                    Case Manager

29